UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| In re: | : | CHAPTER 13 |
| | : | |
| STUART RICHARD BLATT, | : | CASE NO.: 17-19159-PGH |
| | : | |
| _____Debtor._____/ | | |

**OBJECTION TO CONFIRMATION OF FIRST
AMENDED CHAPTER 13 PLAN [D.E. 41]**

COMES NOW, Secured Creditor, Gil Aboodi (hereinafter "*Aboodi*"), by and through his undersigned counsel, and files this Objection to Confirmation of Debtor's First Amended Chapter 13 Plan [D.E. 41] and states as follows:

1. Aboodi holds a first mortgage on Debtor's real property located at 2502 Antigua Terrace, Apt. B-4, Coconut Creek, FL 33066. Copies of this mortgage and promissory note are attached hereto as **Composite Exhibit "A"**.

2. Due to the Debtors default under the terms of the note and mortgage, on October 16, 2017, Aboodi filed a foreclosure action in the Seventeenth Judcial Circuit Court of Florida, which matter bears case number CACE 17-018920 (11), and remains pending as of the date of this pleading.

3. Aboodi shall file a proof of claim showing the arrearage due.

4. The Debtor on his schedules [D.E.15] incorrectly lists Aboodi as an unsecured creditor when in fact Aboodi is a secured creditor; and further the Debtor lists the debt as "unliquidated." Additionally, the Debtor's First Amended Chapter 13 Plan [D.E.41] merely provides for payment of monthly interest due under the note and mortgage, however fails to address the $20,000.00 balloon payment which becomes due on April 30, 2019, during the course of the plan payment period.

5. Aboodi objects to the Plan filed by the Debtor. Aboodi additionally reserves the right to supplement or modify this objection at or prior to the confirmation hearing.

Dated: December 17, 2017.

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail on this 17th day of December, 2017, to the Debtor:

Stuart Richard Blatt
4750 S Ocean Blvd #308
Highland Beach, FL 33487

I CERTIFY that a true and correct copy of the foregoing was served via the Notice of Electronic Filing on this 17th day of December, 2017, to:

- **Bouavone Amphone**    bkyecf@rasflaw.com , bamphone@rasflaw.com ; ras@ecf.courtdrive.com
- **Joseph Arena**    jarena@ssclawfirm.com , bankruptcy@ssclawfirm.com ; crestivo@ssclawfirm.com
- **Steven M Davis**    sdavis@bplegal.com
- **Elizabeth W Eckhart**    eeckhart@logs.com , electronicbankruptcynotices@logs.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov
- **Jeffrey M Siskind**    jeffsiskind@msn.com , jmsesq500@gmail.com
- **Deborah S. Sugarman**    dsugarman@kayebenderlaw.com
- **Jerome L Tepps**    courtpapers@teppslawfirm.com ;, jerome@teppslawfirm.com ; william@teppslawfirm.com ; G14314@notify.cincompass.com
- **Robin R Weiner**    ecf@ch13weiner.com ; ecf2@ch13weiner.com
- **Scott R. Weiss**    scott.weiss@clegalgroup.com , bankruptcy@clegalgroup.com

        JEROME L. TEPPS, P.A.
        Attorneys for Gil Aboodi
        4300 North University Drive, Suite C-102
        Sunrise, Florida  33351
        Telephone: (954) 565-3231
        Primary e-mail:  courtpapers@teppslawfirm.com
        Secondary e-mail: jerome@teppslawfirm.com

    BY:    */s/ Jerome L. Tepps, Esq.*
            ■ JEROME L. TEPPS, ESQ.
               Florida Bar No. 283045
            ☐ WILLIAM A. TRECO, ESQ.
               Florida Bar No. 89409

# COMPOSITE EXHIBIT A

# PROMISSORY NOTE

$20,000.00                                                                                April 1ST, 2016
                                                                                          _____, _____

  **FOR VALUE RECEIVED**, the undersigned, **Stuart Blatt** (hereinafter referred to as the "Maker") promises to pay to **Gil Aboodi**, (hereinafter referred to as the "Payee"), or order, at 206 West Ivy Land, Englewood, New Jersey 07631, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **Twenty Thousand ($20,000.00) Dollars**, with interest at the rate of Fifteen (15%) percent per annum, payable as follows:

  Interest only payable in thirty six (36) equal consecutive monthly installments of Two Hundred Fifty ($250.00) Dollars each commencing April 30th, 2016, and continuing on the 30th day of each and every month thereafter. The entire unpaid principal balance plus accrued interest shall be due and payable in full on April 30th, 2019.

  There shall be a five (5) calendar day grace period before default, in which a five (5%) percent late charge will be assessed.

  If any installment of interest or any part thereof is not paid within fifteen (15) days from the date due or within ten (10) days upon occurrence of any one or more events of default specified in any agreement, mortgage or security agreement referred to in this Note which has not been remedied within the time specified therein, if any, or in the event of any default under any guaranty, all amounts then remaining unpaid on this Note may be declared to be immediately due and payable.

  This Note may be prepaid in part or in whole at any time without penalty.

  The Maker, endorsers, guarantors, sureties and all other parties liable for the payment of any sum or sums due or to become due under the terms of this Note waive presentment, protest and demand, and notice of protest, demand and dishonor, and non-payment of this Note, and consent that the holder hereof shall have the right, without notice, to deal in anyway at any time with any party hereto, or to grant any extension or extensions of time for payment of any of the indebtedness or any other indulgences or forbearances whatsoever, or may release any of the security for this note or guarantors of this Note without in anyway affecting the liability of any other party for the payment of the Note.

  The Maker hereof does not intend or expect to pay, nor does the Payee intend or expect to charge, accept or collect any interest which shall be in excess of the highest lawful rate allowable under the laws of the State of Florida or the United States of America. Should acceleration, prepayment or any other charges upon the principal or any portion thereof result in the computation or earning of interest in excess of the highest lawful rate allowable under the laws of the State of Florida or the United States of America, whichever is higher or unlimited, any and all such excess is hereby waived and shall be credited to the outstanding principal balance or returned to the Maker.

                           */signature/*
                           (Initials)

While in default and after maturity of this Note, either by its terms or acceleration, interest shall accrue and be payable at the highest rate of interest permitted by the usury laws of the State of Florida and of the United States, whichever is higher or unlimited, from the due date until paid. The post judgment rate of interest for any judgment entered pursuant to this Note or any other loan document executed in connection herewith shall be the greater of: (i) the default rate set forth in this Note; or (ii) the rate established by the Comptroller of the State of Florida pursuant to Section 55.03 (1), Florida Statutes.

No delay on the part of the Payee in exercising any power or right hereunder shall operate as a waiver thereof; nor shall any single exercise or partial exercise of any power or right hereunder preclude other or further exercise thereof or the exercise of any other power or right; nor shall the Payee be liable for exercising or failure to exercise any such power or right hereunder. The rights or remedies herein expressly specified are cumulative and not exclusive remedies which the Payee may have.

This Note is secured by a first mortgage executed by the Maker hereof constituting a lien on real estate. It is expressly agreed that all of the covenants, conditions and agreements contained in the mortgage executed in connection herewith are hereby made part of this Note.

In addition to any other event provided in this Note, the Maker will be in default upon occurrence of any of the following: (a) any creditor tries to take any of Maker's property on or in which Payee has a lien or security interest (this includes a garnishment of any of Maker's accounts with Payee) and (b) the issuance of any tax levy or lien against Maker or Maker's failure to pay, withhold, collect or remit any tax when assessed or due.

This Note shall be governed, construed and interpreted in accordance with the laws of the State of Florida without giving effect to principles of conflict laws.

Should it become necessary to collect this Note through an attorney, all parties hereto, whether Maker, Endorser or Guarantor, each severally agrees to pay all costs of collecting this Note, including reasonable attorneys' fees, plus costs incurred in enforcing this Note and recovery of all amounts owing by Payee whether collected by suit including in trial, on appeal, in Bankruptcy proceedings or otherwise.

This Note may not be terminated orally, but only by discharge in writing and signed by the party who is the owner and holder of this Note at the time enforcement of any discharge is sought.

The Payee may so transfer this Note and/or any of its rights and power hereunder, and in the event of such transfer, the transferee hereof or of such rights and powers shall have the same rights and remedies hereunder as if originally named herein in place of the Payee.

This Note and the provisions hereof are to be binding upon the heirs, executors, administrators, assigns or successors of Maker and Payee.

_____
(Initials)

PAYEE AND MAKER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE NOTE, THE MORTGAGE OR ANY OTHER LOAN DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON. THIS SECTION IS A MATERIAL INDUCEMENT FOR THE PAYEE TO EXTEND THE LOAN EVIDENCED BY THIS NOTE.

_____(Seal)
**Stuart Blatt**

(Initials)

**This instrument prepared by:**
Alan B. Gest, Attorney at Law
20801 Biscayne Blvd, Suite
506 Aventura, FL 33180

# MORTGAGE AND SECURITY AGREEMENT

THIS **MORTGAGE** is executed this /ST day of April, 2016, by and between **Stuart Blatt,** a single man, whose address is 4750 S. Ocean Blvd, #308, Highland Beach, Fl. 33487, (hereinafter referred to as the **"Mortgagor"**) and **Gil Aboodi,** whose address is 206 West Ivy Lane, Englewood, New Jersey 07631, (hereinafter referred to as the **"Mortgagee"**).

## W I T N E S S E T H:

For good and valuable consideration and to secure the payment of an indebtedness in the aggregate sum of **Twenty Thousand ($20,000.00) Dollars** to be paid in accordance with a Promissory Note of **even date herewith** made by Mortgagor and payable to Mortgagee (hereinafter referred to as the "Note") together with interest thereon and any and all other notes secured by this Mortgage and all sums due or which may become due from Mortgagor to Mortgagee and any renewals, extensions, consolidations or modifications of all of the foregoing, Mortgagor does grant, mortgage and convey unto Mortgagee, its successors and assigns, in fee simple, all of that certain tract of land of which Mortgagor is now seized and possessed and in actual possession, situate in the **County of Broward, State of Florida,** which is more fully described as follows, together with the buildings and improvements thereon erected (all hereinafter referred to as the "Premises"):

> Unit B-4, of **Antigua Village I "D" Condominium,** a Condominium according to the Declaration of Condominium thereof, as recorded in Official Records Book 8184, at Page 10, and all exhibits and amendments thereto, of the Public Records of Broward County, Florida.

TOGETHER with the following property and rights:

(a) All right, title and interest of Mortgagor in and to any leases or subleases covering the Premises or any portion thereof now or hereafter existing or entered into, and all right, title and interest of Mortgagor thereunder, including, without limitation, all cash or security deposits, advance rentals, and deposits or payments of similar nature;

(b) All right, title and interest of Mortgagor in and to all options to purchase or lease the Premises or any portion thereof or interest therein, and any greater estate in the Premises owned or hereafter acquired;

(c) All interests, estate or other claims, both in law and in equity, which Mortgagor now has or may hereafter acquire in the Premises;

(d) All easements, rights-of-way and rights used in connection therewith or as a means of access thereto and all tenements, hereditaments and appurtenances thereof and thereto, all right, title and interest of Mortgagor in and to any streets and roads abutting said Premises to the center lines thereof and in and to any strips or gores of land therein, all water, sanitary and storm systems that are now or hereafter located on or adjacent to the Premises and all gas and oil rights, mineral rights, timber rights and riparian and littoral rights pertaining to the Premises;

(Initials)

1

(e) All machinery, apparatus, equipment, fittings, fixtures and articles of personal property of every kind and nature whatsoever, now owned or hereafter owned by Mortgagor and which is now or will hereafter be located in or upon the Premises, or any part thereof, and used or usable in connection with the use and operation of buildings or for use in any construction being conducted on the Premises, (hereinafter called the "Building Equipment"), it being understood and agreed that all Building Equipment is part and parcel of the Premises and appropriated to the use thereof and, whether affixed or annexed to the Premises or not, shall for the purpose of this Mortgage be deemed conclusively to be real estate and mortgaged hereby; and Mortgagor agrees to execute and deliver, from time to time, such further instruments as may be requested by Mortgagee to confirm the lien of this Mortgage on any Building Equipment;

(f) All awards and proceeds to which Mortgagor is entitled by virtue of any taking of all or any part of the Premises by condemnation or exercise of the right of eminent domain or other taking, as hereinafter more particularly set forth; and

(g) All rents, issues and profits of the Premises and all estate, right, title and interest of every nature whatsoever of Mortgagor in and to the same, as hereinafter more particularly set forth;

The Premises and all of the property, rights, privileges and franchises granted herein by Mortgagor to Mortgagee are collectively referred to as the "Mortgaged Property."

TO HAVE AND TO HOLD all and singular the Mortgaged Property hereby conveyed, the tenements, hereditaments and appurtenances thereunto belonging or in anyway appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof and all estate, right, title, interest, property, possession, claim and demand whatsoever as well in law, as in equity of the Mortgagor in and to the same and every part and parcel thereof unto the said Mortgagee in fee simple.

PROVIDED, HOWEVER, that these presents are upon the condition that if Mortgagor shall pay or cause to be paid to Mortgagee the principal and interest payable in respect to the Note and all amounts and any other promissory note secured by this Mortgage, at the times and in the manner stipulated therein and herein, all without any deduction or credit for taxes or other similar charges paid by Mortgagor, and shall keep, perform and observe all and singular the covenants and promises in the Note, and any renewal, extension, consolidation or modification thereof, and in this Mortgage expressed to be kept, performed and observed by and on the part of Mortgagor, all without fraud or delay, then this Mortgage and all properties, interest and rights granted, mortgaged and conveyed shall cease, terminate and be void but until same shall occur, this Mortgage shall otherwise remain in full force and effect.

## ARTICLE 1
## COVENANTS AND AGREEMENTS OF MORTGAGOR

To protect the security of this Mortgage, Mortgagor further covenants, warrants and agrees with Mortgagee as follows:

1.01 <u>Payment of Secured Obligations</u>. Mortgagor shall pay when due the principal on the indebtedness evidenced by the Note, charges, fees and principal of, any future advances secured by this Mortgage and shall otherwise comply with all the terms of the Note and this Mortgage.

1.02 <u>Title Warranties and Representations</u>. Mortgagor hereby covenants with Mortgagee that Mortgagor is (a) indefeasibly seized of the Premises in fee simple; (b) Mortgagor has full power and lawful right to convey the same in fee simple as aforesaid; (c) that it shall be lawful for Mortgagee at all times to peaceably and quietly enter upon, hold, occupy and enjoy said Premises and every part thereof; (d) that Mortgagor will make such further assurances to perfect the fee simple title to said Premises in Mortgagee, as may reasonably be required; (e) that the Mortgaged Property is free of all liens and encumbrances and taxes for the current year; (f) Mortgagor does hereby fully warrant title to the Mortgaged Property and every

_____ (Initials)

2

part thereof and will defend same against the lawful claims of all persons whomsoever; and (g) that the Mortgaged Properties shall be used solely for investment purposes and not the residence of the Mortgagor.

1.03 <u>Required Insurance.</u> Mortgagor will, at Mortgagor's sole cost and expense, maintain or cause to be maintained with respect to the Mortgaged Property, and each part thereof, the following insurance.

(a) Hazard Insurance against loss or damage to the building improvements on the land and the Building Equipment (hereinafter referred to as the "Improvements") by fire and any of the risks covered by insurance of the type known as "all-risk" including, without limitation, coverage for plate glass damage, sprinkler leakage and sink hole collapse. Coverage shall be in an amount not less than the full replacement cost of the Improvements but not less than an amount equal to the amount of the loans secured hereby, including heating and air conditioning coverage at 100% of replacement cost. (Co-insurance is to be waived by the insurer.)

(b) Flood insurance is required if at any time the encumbered land is designated a flood prone or flood risk area, pursuant to the Flood Disaster Protection Act of 1973, as amended or supplemented.

(c) Windstorm insurance in such amounts as Mortgagee may reasonably require from time to time.

1.04 <u>Delivery of Policies, Payment of Premiums.</u> All policies of insurance shall be issued by companies and in amounts satisfactory to Mortgagee. All policies of insurance shall have attached thereto a lender's loss payment endorsement for the benefit of Mortgagee in form satisfactory to Mortgagee. The original policies and renewals shall be held by Mortgagee or if acceptable to Mortgagee, a certificate of insurance for each such policy setting forth coverage, limits of liability, name of carrier, policy number, and expiration date. At least fifteen (15) days prior to expiration of each such policy, Mortgagor shall furnish Mortgagee with evidence satisfactory to Mortgagee, of payment of premium and reissuance of a policy continuing insurance in force as required by this Mortgage. All such policies shall contain a provision that such policies will not be cancelled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days prior written notice to Mortgagee. In the event Mortgagor fails to provide, maintain, keep in force or deliver and furnish to Mortgagee the policies of insurance or certificates thereof, as required by this Section, Mortgagee may procure such insurance or single interest insurance for such risks covering Mortgagee's interest. Repayment shall be governed by the provisions of Section 3.03 of this Mortgage. Should Mortgagor fail to maintain said insurance policies or fail to make timely payments in order to maintain said insurance policies, Mortgagee shall have the right to force place insurance and require Mortgage to place estimated insurance payments in escrow with Mortgagee.

1.05 <u>Insurance Proceeds.</u> After the happening of any casualty to the Mortgaged Property or any part thereof, Mortgagor shall give prompt written notice thereof to Mortgagee; and

(a) in the event of damage to or destruction of the Improvements, Mortgagee shall have the option, in its sole discretion subject further to subparagraph (b) below, of applying or paying all or part of the insurance proceeds (i) to any indebtedness secured hereby and in such order as Mortgagee may determine, or (ii) to the restoration of the Improvements, or (iii) to Mortgagor;

(b) Mortgagee agrees not to unreasonably withhold consent to the use of insurance proceeds for restoration of the Improvements following a partial casualty loss, subject to (i) Mortgagor maintaining the Mortgage free from default at all times; (ii) Mortgagor providing evidence that adequate funds are available to restore the Improvements and advancing any additional funds required prior to the disbursement of insurance proceeds; (iii) all tenants at the Premises acknowledging their leases remain valid and in full force; and (iv) Mortgagee retaining control of insurance proceeds prior to use for restoration;

(c) in the event of such loss or damage, all proceeds of insurance subject to the rights of any superior lien holders, shall be payable to Mortgagee and Mortgagor. Mortgagor hereby authorizes and directs any

3                                                                                  (Initials)

affected insurance company to make payment of such proceeds directly to Mortgagee. Mortgagee is hereby authorized and empowered by Mortgagor to settle, adjust or compromise any claims for loss, damage or destruction under any policy or policies of insurance. Mortgagor hereby irrevocably appoints Mortgagee its attorney-in-fact coupled with an interest with the power and authority to endorse any checks, drafts or other instruments representing any proceeds of such insurance, whether payable by reason of loss thereunder or otherwise;

(d) except to the extent that insurance proceeds are received by Mortgagee and applied to the indebtedness secured hereby, nothing herein contained shall be deemed to excuse Mortgagor from repairing or maintaining the Mortgaged Property as provided in this Mortgage or restoring all damage or destruction to the Mortgaged Property, regardless of whether or not there are insurance proceeds available or whether any such proceeds are sufficient in amount, and the application or release by Mortgagee of any insurance proceeds shall not cure or waive any default or notice of default under this Mortgage or invalidate any act done pursuant to such notice; and,

(e) nothing herein shall relieve Mortgagor from making the payments required by the Note and any other obligation of Mortgagor secured hereby.

1.06 Assignment of Policies Upon Foreclosure. In the event of foreclosure of this Mortgage or other transfer of title or assignment of the Mortgaged Property in extinguishment, in whole or in part of the debt secured hereby, all right, title and interest of Mortgagor in and to all policies of insurance required by this Section shall inure to the benefit of and pass to the successor in interest to Mortgagor or the purchaser or grantee of the Mortgaged Property.

1.07 Indemnification; Waiver of Offset. a) If Mortgagee is made a party defendant to any litigation (including without limitation, any litigation brought by Mortgagor whether initially or by counterclaim) concerning this Mortgage or the Mortgaged Property or part thereof or interest therein, or occupancy thereof by Mortgagor, then Mortgagor shall indemnify, defend and hold Mortgagee harmless from all liability by reason of said litigation, including reasonable attorneys' fees and expenses incurred by Mortgagee in any such litigation, whether or not such litigation is prosecuted to judgment; (b) All sums payable by Mortgagor hereunder shall be paid absolutely, unconditionally, without notice, demand, counterclaim, setoff, deduction or defense and absolutely and unconditionally without abatement, suspension, deferment, diminution or reduction. The obligations and liabilities of Mortgagor hereunder shall in no way be released or discharged (except as expressly provided herein) by reason of: (i) any damage to or destruction of or any condemnation or similar taking of the Mortgaged Property or any part thereof; (ii) any restriction, prevention of or interference with any use of the Mortgaged Property or any part thereof; (iii) any title defect, encumbrance or eviction from the Premises or the Improvements or any part thereof by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Mortgagor, or any action taken with respect to this Mortgage by any trustee or receiver of Mortgagee, or by any court, in any such proceeding.

1.08 Taxes, Utilities and Impositions. Mortgagor will pay, or cause to be paid and discharged, on or before the last day on which they may be paid without penalty or interest, all such duties, taxes, sewer rents, charges for water, or for setting or repairing meters, and all other utilities in the Improvements or on the Premises or any part thereof, and any assessments and payments which shall be imposed upon or become due and payable or become a lien upon the Premises or any part thereof and sidewalks or streets in front thereof by virtue of any present or future law of the United States or the State, County or City wherein the Premises are located (all of the foregoing being herein collectively called "Impositions.") In default of any such payment of any Imposition, Mortgagee may pay the same. Repayment shall be governed by the provisions of Section 3.03 of this Mortgage.

Mortgagor will exhibit to Mortgagee the original receipts or other reasonably satisfactory proof of the payment of all Impositions which may affect the Mortgaged Property or any part thereof or the lien of the Mortgage promptly following the last date on which each such Imposition is payable hereunder.

(Initials)

Should Mortgagor fail to pay the real estate taxes when due, then Mortgagee shall have the right to require Mortgagor to place in escrow with Mortgagee the estimated real estate taxes.

1.09 <u>Omitted.</u>

1.10 <u>Maintenance, Repairs, Alterations.</u>  Mortgagor will keep the Mortgaged Property, or cause same to be kept in good condition, repair and fully protected from the elements to the satisfaction of Mortgagee and Mortgagor will not do or suffer to do anything which will increase the risk of fire or other hazard to the Premises or any part thereof. Mortgagor will commit or permit no waste thereon and will do or permit no act by which the Mortgaged Property shall become less valuable. Mortgagor will not remove, demolish or structurally alter any of the Improvements (except such alterations as may be required by laws, ordinances or regulations) without prior written permission of Mortgagee; Mortgagor will complete promptly and in good and workmanlike manner any building or improvements which may be constructed on the Premises and promptly restore in like manner any Improvement which may be damaged or destroyed thereon and will pay when due all claims for labor performed and materials furnished therefor. Mortgagor will use and operate, and will require its lessees or licensees to use and operate the Mortgaged Property in compliance with all applicable laws, ordinances, regulations, covenants, conditions and restrictions, and with all applicable requirements of any lease or sublease now or hereafter affecting the Premises or any part thereof.

1.11 <u>Eminent Domain.</u>

(a)  Should the Mortgaged Property or any part thereof or interest therein, be taken or damaged by reason of any public use or improvement or condemnation proceeding, or in any other manner ("Condemnation") or should Mortgagor receive any notice or information regarding such Condemnation, Mortgagor shall give prompt written notice thereof to Mortgagee;

(b)  Mortgagee shall be entitled to all awards, compensation, and other payment or relief granted in connection with such Condemnation and shall be entitled, at its option, to appear in its own name or the Mortgagor's name, in any action or proceeding relating thereto. In the event of such an appearance, Mortgagor agrees to pay reasonable attorneys' fees incurred by Mortgagee. All compensation, awards, damages, rights of action and proceeds awarded to Mortgagor (the "Proceeds") are hereby assigned to Mortgagee and Mortgagor agrees to execute such further assignments of the Proceeds as Mortgagee may require;

(c)  In the event any portion of the Mortgaged Property is so taken or damaged, Mortgagee and Mortgagor shall have the option to apply all such Proceeds, after deducting therefrom all costs and expenses (regardless of the particular nature thereof whether incurred with or without suit), including attorneys' fees incurred by it in connection with such Proceeds, upon any indebtedness secured hereby, or apply all such Proceeds after such deductions to the restoration of the Mortgaged Property upon such conditions as Mortgagee may determine. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice; and

(d)  Any amounts received by Mortgagee and Mortgagor hereunder (after payment of any costs in connection with obtaining same) shall, if retained by Mortgagee, be applied in payment of any accrued interest and then in reduction of the then outstanding principal sum of the Note secured hereby, notwithstanding that same may not then be due and payable. Any amount so applied to principal shall be applied to the payment of installments of principal on the Note in inverse order of their respective due dates.

1.12 <u>Action of Mortgagee to Preserve Security of this Mortgage.</u>  In the event Mortgagee is called upon to pay any sums of money to protect this Mortgage and the Note secured hereby as aforesaid, all monies advanced or due hereunder shall become immediately due and payable together with interest at the maximum rate permitted by Florida law computed from the date of such advance to the date of the actual receipt of payment thereof by Mortgagee.

_____
(Initials)

5

1.13 Inspections. Upon prior notice, Mortgagee, their agents, representatives, or workmen are authorized to enter at any and all reasonable times upon or in any part of the Premises for the purpose of inspecting same and performing any of the acts it is authorized to perform under the terms of this Mortgage. Mortgagor agrees to reimburse Mortgagee for reasonable out-of-pocket expenses incurred by them in connection with such inspections.

1.14 Liens. Mortgagor will not permit any liens, encumbrances, mechanics', laborer's, statutory or other lien and charges upon the Mortgaged Property, and shall pay and promptly discharge, at Mortgagor's cost and expense, all such liens, encumbrances and charges upon the Mortgaged Property or any part thereof or interest therein. Mortgagor shall have the right to contest in good faith the validity of any such lien, encumbrance or charge, provided Mortgagor shall first deposit acceptable security with a court of competent jurisdiction sufficient to eliminate the lien as a lien upon the Premises. If Mortgagor shall fail to transfer the lien to a bond or otherwise discharge any such lien, encumbrance or charge, then in addition to any other right or remedy of Mortgagee, Mortgagee may but is not obligated to discharge same either by paying the amount claimed to be due or by procuring the discharge of such lien by depositing in court a bond for the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law. Repayment shall be governed by the provisions of Section 3.03 of this Mortgage.

## ARTICLE 2
## SECURITY AGREEMENT

2.01 Creation of Security Interest. Mortgagor hereby grants to Mortgagee a security interest in the personal property located on or at the Premises for the purpose of securing all obligations of Mortgagor set forth in this Mortgage. A security interest is granted Mortgagee in all rental and security deposits collected by Mortgagor from any tenants in the premises.

2.02 Warranties, Representations and Covenants of Mortgagor. Mortgagor hereby warrants, represents and covenants as follows:

(a) The personal property will be kept on or at the Premises and Mortgagor will not remove the personal property from the Premises without the prior written consent of Mortgagee, except such portions or items of personal property which are consumed or worn-out in ordinary usage, all of which shall be promptly replaced by Mortgagor with new items of equal or greater quality.

(b) At the request of Mortgagee, Mortgagor will join Mortgagee in executing one or more financing statements and renewals and will pay the cost of filing same in all public offices wherever necessary.

(c) This Section 3 of the Mortgage shall constitute a Security Agreement as that term is used in the Uniform Commercial Code of Florida.

## ARTICLE 3
## EVENT OF DEFAULT AND REMEDIES UPON DEFAULT

3.01 Event of Default. The term "Event of Default" wherever used in the Mortgage, shall mean any one or more of the following events:

(a) Failure by Mortgagor to pay within ten (10) days of when due the principal payment under the Note, or, or to pay within ten (10) days any other sums to be paid by Mortgagor hereunder, or to make any deposits for taxes and assessments or insurance premiums due hereunder, if required.

(b) Other than as provided in paragraph (a) above, failure by Mortgagor to duly keep, perform and observe any other covenant, condition or agreement in this Mortgage, or any other instrument securing the

6                                                                                    (Initials)

Note or any other instrument or agreement collateral to the Note or executed in connection with the sums secured hereby, for a period of thirty (30) days after Mortgagee gives written notice specifying the breach, or the occurrence of an "Event of Default" as defined in such Note which has not been remedied within any cure period, if any, provided for therein.

(c) If Mortgagor or any present or future endorser, guarantor or surety of the Note shall file a voluntary petition in bankruptcy or be adjudicated a bankrupt or insolvent, or file any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, assignment for the benefit of creditor's, receivership, wage earner's plan, dissolution or similar relief under any present or future Federal Bankruptcy Code or any other present or future applicable federal, state or other statute or law; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Mortgagor or all or any part of the properties of Mortgagor or of any guarantor or endorser of the Note; or if within thirty (30) days after commencement of any proceeding against Mortgagor or any guarantor or endorser of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, debtor relief or similar relief under any present or future Federal Bankruptcy Code, or of any other present or future federal, state or other statute or law, such proceeding shall not have been dismissed, or stayed on appeal or otherwise; or if, within the thirty (30) days after the appointment, without consent or acquiescence of Mortgagor or of any endorser or guarantor of the Note, or any trustee, receiver, or liquidator of Mortgagor or any endorser or guarantor of the Note, or of all or any portion of the Mortgaged Property, such appointment shall not have been vacated or stayed on appeal or otherwise; or if within ten (10) days after the expiration of any such stay, such appointment shall not have been vacated.

(d) Any default under any mortgage inferior to the Mortgage, or an event that but for the passage of time or giving of notice would constitute an event of default, even if such default is subsequently waived, except that in no manner should this provision be construed to allow such subordinate mortgage to encumber the Mortgaged Property.

(e) If foreclosure proceedings should be instituted on any mortgage inferior to the Mortgage, or if any foreclosure proceeding is instituted on any lien of any kind which is not dismissed or transferred to a bond within twenty (20) days of the service of foreclosure proceedings on the Mortgagor.

(f) Any breach of any warranty or material untruth or any material representation of Mortgagor contained in the Note, this Mortgage or any other instrument securing or evidencing the Note, or in any other instrument given with respect to the sums secured hereby.

(g) If the Improvements on said Premises are not maintained in reasonably good repair.

3.02 <u>Acceleration Upon Default, Additional Remedies.</u> In the event one or more "Events of Default" as above provided shall occur, the remedies available to Mortgagee shall include, but not necessarily be limited to, any one or more of the following:

(a)     Mortgagee may declare the entire unpaid balance of the Note and all other obligations of Mortgagor secured hereby immediately due and payable without further notice.

(b)     Mortgagee may take immediate possession of the Mortgaged Property or any part thereof (which Mortgagor agrees to surrender to Mortgagee) and manage, control or lease same to such person or persons and exercise all rights granted. The taking of possession under this Section shall not prevent concurrent or later proceedings for the foreclosure sale of the Mortgaged Property as provided elsewhere herein.

(c)     Mortgagee may apply, on ex parte motion to any court of competent jurisdiction, for the appointment of a receiver to take charge of, manage, preserve, protect, complete construction of and operate the Mortgaged Property and any business or businesses located thereon, to collect rents, issues, profits and income therefrom; to make all necessary and needed repairs to the Mortgaged Property; to pay all taxes and


(Initials)

7

assessments against the Mortgaged Property and insurance premiums for insurance thereon; and after payment of the expense of the receivership, including reasonable attorneys' fees to the Mortgagee's attorney, and after compensation to the receiver for management and completion of the Mortgaged Property, to apply the net proceeds derived therefrom in reduction of the indebtedness secured hereby or in such manner as such court shall direct. All expenses, fees and compensation incurred pursuant to a receivership approved by such court, shall be secured by the lien of this Mortgage until paid.

(d) Mortgagee shall have the right to foreclose this Mortgage and in case of sale in an action or proceeding to foreclose this Mortgage, Mortgagee shall have the right to sell the Mortgaged Property covered hereby in parts or as an entirety. It is intended hereby to give to Mortgagee the widest possible discretion permitted by law with respect to all aspects of any such sale or sales.

(e) Without declaring the entire unpaid principal balance due, Mortgagee may foreclose only as to the sum past due without injury to this Mortgage or the displacement or impairment of the remainder of the lien thereof and at such foreclosure sale the Mortgaged Property shall be sold subject to all remaining items of indebtedness; and Mortgagee may again foreclose in the same manner as often as there may be any sum past due.

(f) It shall also not be necessary that Mortgagee pay any Impositions, premiums or other charges regarding which Mortgagor is in default before Mortgagee may invoke its rights hereunder.

(g) Exercise all other remedies available at law or equity in such order as Mortgagee may elect.

(h) All such other remedies available to Mortgagee with respect to this Mortgage shall be cumulative and may be pursued concurrently or successively. No delay by Mortgagee in exercising any such remedy shall operate as a waiver thereof or preclude the exercise thereof during the continuance of that or any subsequent default.

(i) The obtaining of a judgment or decree on the Note, whether in the State of Florida or elsewhere, shall not in anyway affect the lien of this Mortgage upon the Mortgaged Property covered hereby, and any judgment or decree so obtained shall be secured hereby to the same extent as said Note is now secured.

3.03 Repayment of Advances. In the event of any expenditures of funds by Mortgagee to preserve the security of the lien referenced in this Mortgage, such as provisions for payment of taxes or insurance premiums or as otherwise provided for herein, Mortgagor shall repay Mortgagee for such expenditures, together with interest on said sums at the highest interest rate permitted by Florida law, within fifteen (15) days of notice to Mortgagor of such expenditures. These sums shall be secured by this Mortgage. The Mortgagee shall be the sole judge of the legality, validity and priority of any Imposition, obligation and insurance premium, of the necessity for paying such Imposition, obligation and insurance premium and of the amount necessary to be paid in satisfaction thereof.

3.04 Expenses. Mortgagor shall pay, or reimburse Mortgagee for all costs, charges and expenses, including reasonable attorney's fees and paralegal charges, including appellate proceedings, and disbursements, and costs of abstracts of title incurred or paid by Mortgagee in any action, proceeding or dispute in which Mortgagee is made a party or appears as a party plaintiff or party defendant because of the failure of the Mortgagor promptly and fully to perform and comply with all conditions and covenants of this Mortgage and the Note secured hereby, including but not limited to, the foreclosure of this Mortgage, condemnation of all or part of the Mortgaged Property, or any action to protect the security thereof. All costs, charges and expenses so incurred by Mortgagee shall become immediately due and payable whether or not there be notice, demand, attempt to collect or suit pending, together with interest thereon at the highest rate permitted by Florida law from the date incurred until paid by Mortgagor. The amounts so paid or incurred by Mortgagee shall be secured by the lien of this Mortgage. This Mortgage shall also secure all fees, charges, costs, reimbursements and other sums, if any, that are provided for in the Note or other agreement between


(Initials)

Mortgagor and Mortgagee, and would be due by Mortgagor to Mortgagee upon prepayment of the Note, whether such prepayment is voluntary or arises from Mortgagee's acceleration of the Note due to a default thereunder or hereunder.

## ARTICLE 4
## MISCELLANEOUS PROVISIONS

4.01 <u>Statements by Mortgagor.</u> Mortgagor, within three (3) business days after request in person or ten (10) days after request by mail, will furnish to Mortgagee or any person, corporation or firm designated by Mortgagee, a duly acknowledged written statement setting forth the amount of the debt secured by this Mortgage and stating either that no offsets or defenses exist against such debt, or, if such offsets or defenses are alleged to exist, full information with respect to such alleged offsets and/or defenses.

4.02 <u>Survival of Warranties.</u> All representations, warranties and covenants of Mortgagor contained herein or incorporated by reference shall survive the close of escrow and funding of the loan evidenced by the Note and shall remain continuing obligations, warranties and representations of Mortgagor during any time when any portion of the obligations secured by this Mortgage remain outstanding.

4.03 <u>Successors and Assigns.</u> The provisions hereof shall be binding upon and shall inure to the benefit of Mortgagor, its successors and assigns (including without limitation subsequent owners of the Premises) and shall be binding upon and shall inure to the benefit of Mortgagee, its successors and assigns and any future holder of the Note hereby secured, and any successors or assigns of any future holder of the Note.

4.04 <u>Notices.</u> All notices, demands and requests given by either party hereto to the other party shall be in writing. All notices, demands and requests by one party to the other shall be deemed to have been properly given as herein required if sent by (i) United States registered or certified mail, postage prepaid, or (ii) delivered in person, or (iii) sent by overnight courier to the address indicated on page 1 hereof or at such other address as a party may from time to time designate by written notice to the other, any notice delivered to the address set forth in page 1 shall be deemed delivered if delivery thereof is rejected or refused at the address provided.

4.05 <u>Modifications in Writing.</u> This Mortgage may not be changed, terminated or modified orally or in any other manner than by an instrument in writing signed by the party against whom enforcement is sought.

4.06 <u>Captions.</u> The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Mortgage.

4.07 <u>Maximum rate of interest.</u> In no event shall all charges in the nature of interest charged or taken on this Mortgage or the Note exceed the maximum allowed by law and in the event such charges cause the interest to exceed said maximum allowed by law, such interest shall be recalculated, and such excess shall be credited to principal, it being the intent of the parties that under no circumstances shall the Mortgagor be required to pay any charges in the nature of interest in excess of the maximum rate allowed by law.

4.08 <u>Further Assurances.</u> Mortgagor will execute and deliver promptly to Mortgagee on demand at any time or times hereafter, any and all further instruments reasonably required by Mortgagee to carry-out the provisions of this Mortgage. Mortgagor will, without limitation upon the generality of the foregoing, at any and all times at its expense, execute, acknowledge, deliver, file and/or record, refile and/or re-record, all and every such further acts, deeds, powers of attorney, assignment of accounts, conveyances, mortgages security instruments, documents and financing assurances in law, and will deposit with Mortgagee any certificates of title issuable with respect to any property and notation thereof the security interest hereunder, as Mortgagee shall reasonably require for the better assuring, conveying, pledging, transferring, mortgaging, assigning, and confirming unto Mortgagee all and singular the hereditaments and premises, estates and property hereby, or


(Initials)

9

by subsequent or collateral instruments, conveyed, pledged, transferred or assigned, or intended to be, and for perfecting the security interest of Mortgagee in the Mortgaged Property and other items of security and collateral now or hereafter held by Mortgagee pursuant to this Mortgage, and pay any and all requisite stamp taxes, recording charges, filing fees, intangible taxes and other taxes legally due and required thereon.

    4.09 Costs.

    (a) Mortgagor will pay all costs and expenses reasonably incurred by Mortgagee in the preparation and recording of this Mortgage and all ancillary documents executed in connection therewith, or with the loan evidenced by the Note, including without limitation, any intangible tax, documentary stamp tax, recording and filing fees and premiums for any required mortgagee title insurance policy, cost of any required survey, as well as the attorney's fees for Mortgagee's counsel.

    (b) Mortgagor agrees that in the event that the Florida Department of Revenue, or any other governmental agency, should determine at any time that additional documentary stamp taxes or intangible taxes are required incident to the Note, this Mortgage or any additional loans secured hereby, Mortgagor shall agree to indemnify and reimburse Mortgagee forthwith for the costs of any additional documentary stamp taxes and/or intangible taxes, together with any interest or penalty that Mortgagee may be called upon to pay. This indemnity obligation shall survive repayment of the Note and any and all other obligations of Mortgagor secured by this Mortgage.

    (c) In the event that Mortgagor shall fail to pay any such additional documentary stamp taxes and/or intangible taxes, same shall constitute an Event of Default hereunder and Mortgagee may pay same, without waiving or affecting any of Mortgagee's other rights and remedies set forth herein. Any such disbursements made by Mortgagee shall bear interest from the date thereof at the highest rate authorized by law, and the Mortgage shall secure repayment of any such disbursements, together with interest accrued thereon.

    4.10 Invalid Provisions to Affect No Others. In case any one or more of the covenants, agreements, terms, or provisions contained in this Mortgage or in the Note shall be held or found invalid, illegal, or unenforceable in any respect, the validity of the remaining covenants, agreements, terms, or provisions contained herein and in the Note shall be in no way affected, prejudiced, or disturbed thereby.

    4.11 Governing Law and Construction of Clauses. This Mortgage shall be governed and construed by the laws of the State of Florida. No act of Mortgagee shall be construed as an election to proceed under any one provision of the Mortgage or of the applicable statutes of the State of Florida to the exclusion of any other such provision, anything herein or otherwise to the contrary notwithstanding.

    4.12 Time of Essence. Time is of the essence of this Mortgage.

    4.13 Waiver. No waiver of any covenant herein or in the obligation secured hereby shall at any time hereafter be held to be a waiver of any of the other terms hereof or of the Note secured hereby, or future waiver of the same covenant.

    4.14 Gender, Etc. The use of any gender shall include all other genders. The singular shall include the plural.

    4.15 Mortgage Riders. If any Rider is attached to this Mortgage and recorded together with this Mortgage and signed by Mortgagor, it shall be deemed to be incorporated herein and to be fully binding upon Mortgagor as though it were a part of the original Mortgage.

    4.16 Waiver of Jury Trial. MORTGAGEE AND MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION

_____ (Initials)

WITH THIS MORTGAGE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE MORTGAGEE MAKING THE LOAN TO MORTGAGOR.

     IN WITNESS WHEREOF, Mortgagor has hereunto set his hand and seal all done as of the day and year first hereinbefore written.

Signed, sealed and delivered
in the presence of:

*Christopher Maynard*
Print Name: *Christopher Maynard*

                                       **Stuart Blatt**

*Marshall Dorsey*
Print Name: *Marshall Dorsey*

STATE OF __Maryland__
COUNTY OF __Baltimore__

     The foregoing instrument was acknowledged before me, this __1st__ day of April, 2016, by **Stuart Blatt**, a single man. He is personally known to me _____ or have produced __Drivers License__ as identification.

Notary Public, State of __Maryland__
Print Name: __Kenny Gonzalez__



**N.B. This Mortgage and Security Agreement has been prepared at the request of Stuart Blatt without examination or legal opinion of Title.**

11